Both counsel are here, Mr. Wright and Mr. Fulton. Mr. Wright, you may proceed. May it please this court, my name is Nathaniel Wright. I represent the appellant, James Ademiju. This court granted a certificate of appealability, finding that Ademiju made a substantial showing of the denial of a constitutional right to review the dismissal of Ademiju's habeas petition, which was filed pro se on the grounds that it was filed four months too late. In declining to equitably toll the deadline, the district court denied Ademiju's request for an evidentiary hearing, yet it relied on factual grounds that were erroneously presented by the government. The government now retreats from its claims, making it clear that the district court's reliance on them was an error. I'd like to direct your attention to two points. First, Ademiju was lulled into believing he had a chance to avoid deportation when he faced an immigration court after serving his sentence. His belief was based on erroneous legal advice that he received when he entered into his plea agreement in violation of Padilla and Lee. All right, let's talk about that time frame. At that point that he's at sentencing, he has both his criminal defense attorney, Mr. Minkus, as well as the immigration attorney, correct? That is correct, yes. And to zero in on what Mr. Ademiju believes was incorrect advice, the presentation made by Mr. Minkus to the district judge that persuaded the district judge to drop the sentence here went to duration and how that might inform a waiver. Is it Mr. Ademiju's position that it's purely the dollar amount of restitution that was somehow misleading? So the ineffective assistance of counsel that Ademiju received when he entered into his plea agreement is that it would be the term of time in prison that would determine whether or not he was subject to mandatory deportation. He didn't know that the offensive conviction and the amount of restitution qualified as an aggravated offense, thereby meaning he was subject to mandatory deportation. So he thought with a short enough sentence, he could avoid mandatory deportation. Should Mr. Ademiju's attention be focused, therefore, on his immigration attorney versus his criminal defense counsel? So his immigration attorney didn't review the plea agreement. His immigration attorney was hired and retained to look into the question of the S-1 visa. And so it's his position. And in the record, he states that his immigration attorney, that his criminal defense attorney never gave his immigration attorney a copy of the plea agreement such that he could review whether or not he was subject to mandatory deportation. How did defense counsel Jonathan Minkus' incorrect advice, even if we take it as what, you know, take the representation as incorrect advice, how did it prevent your client from timely filing a 2255 petition? So first, Ademiju was lulled into believing that the advice that he had received from his counsel was correct. So he didn't know that he had a basis for his habeas petition in order to avoid mandatory deportation. But directing to my second point, seven months after his conviction, Ademiju was effectively told by his counsel that he didn't have a right to file a habeas petition when, in fact, he did. What are you relying upon for that point? So in his briefs, in response to the government's motion to dismiss, he specifically states that he reached out seven months after his conviction and received incorrect legal advice from his counsel. And he even requested that the district court give him an evidentiary hearing where he could introduce evidence of his communications with counsel during that time period. But what he says in that filing, and I'm looking right at it, is that he inquired how to vacate his judgment, and his defense attorney responded in bad faith with a misleading information that the judgment has been finalized. What's the problem with that? So it doesn't inform him that he does, in fact, have an avenue to vacate his sentence through a habeas petition. If Mr. Minkus had said, you have the availability to file a habeas petition if you can find constitutional grounds to challenge your conviction, this would be a different case. But he didn't. Incorrect legal advice doesn't rise to the level of an extraordinary circumstance triggering equitable tolling, even if you want to generously read that as you are. to determine what exactly was said and the impact that it had on Ademiju before dismissing the petition. Here, the allegation that he received ineffective assistance of counsel means that the district court should have held an evidentiary hearing on that question before it dismissed his petition. Estramera is not even an equitable tolling case. You recognize that, right? I do recognize that, but part of the question behind Estramera was whether or not they would, in fact, equitably toll the deadline and whether or not they could consider the merits of the case with equitable tolling. And so under Estramera, they do say that an evidentiary hearing is warranted where the petitioner averts facts that they received incorrect legal advice about their habeas petition. And the court said, basically, we have to look at what was said and what impact it had and whether or not it rose to the level of extraordinary circumstances warranting equitable tolling. You think this is even in the universe of what happened in cases like Holland and Maples? I do. I think, in fact, this is, in some respects, more egregious than what happened in Holland. In Holland, there was an obligation on the part of the attorney to research the deadline of a habeas petition and to provide accurate advice based on that. Here, it goes to the availability itself. Ademiju's counsel didn't research even the availability of a habeas petition before providing him advice. And so in that respect, I would say that this case is even more egregious than the case you have in Holland. Seeing that my time has expired, I'd like to retain the remainder for a while. Thank you, counsel. Mr. Fulgen? Good morning. May it please the court? I hope I'm off mute. Yes. Good morning. May it please the court? Thank you, Mr. Fulgen. The district court correctly denied or dismissed Mr. Ademiju's 2255 petition. And it wasn't an abuse of discretion to hold him to the one-year limitations period and find that he had missed the deadline by several months. Mr. Ademiju has not come forward with any kind of extraordinary external obstacle that would have stood in the way of him filing a timely 2255 motion. The main reason he advances in his briefs and today is that he argues that his criminal defense attorney had lulled him into thinking something about his immigration status that was favorable to him when in fact it was the other way around. In fact, the district court found that this was disingenuous on Ademiju's part, and there was plenty of evidence to back up that finding. Mr. Ademiju had, in his plea agreement, acknowledged that there would be immigration consequences to his plea, that neither the court nor counsel could predict exactly what those consequences would be, but that nevertheless, Ademiju was willing to plead guilty. He wanted to plead guilty, even if the consequence to him was automatic removal from the United States. So from the very beginning, automatic removal, mandatory deportation was on the table for Ademiju, and he went along with it. He acknowledged it in his plea, at the plea hearing, in his sentencing papers, at the sentencing itself. So there's really no basis for finding that he was lulled. Now, one of the members of the court asked about his immigration attorney. In Ademiju's sentencing memorandum in the district court, he indicated, counsel indicated, that he had consulted with an immigration attorney and asked about what the chances were for Ademiju to avoid deportation. And as part of the presentation in mitigation of Mr. Ademiju's sentence, counsel reported that the immigration attorney had said his chances of avoiding deportation in light of this case were negligible at best. And in fact, at sentencing, counsel and Mr. Ademiju presented the fact that he would be getting deported, that he was going back to Nigeria, to a certainty, according to them, as a circumstance in mitigation of his imprisonment. It was accepted by the court and by the government as a potential factor in mitigation. And that indicates that on the very day of sentencing, Ademiju recognized that he was going to be deported, he was going to be sent back to Nigeria. He was not lulled in any sense of the word. Now, the thing about him getting a sentence less than one year long was kind of a stab in the dark by counsel to try to give Mr. Ademiju a chance of avoiding deportation. The court granted him that chance. It turned out to be illusory, because what counted was the fact that Ademiju had pleaded guilty to this fraud offense against the United States, where the loss amount or restitution amount exceeded, I believe the number is $10,000. His fraud scheme was over $2.5 million. There's really no way that Ademiju was ever going to get this loss figure down under $10,000 to give him a chance of avoiding deportation. So this was not an extraordinary external obstacle to Ademiju filing 2255. It may have been the product of his own hopes that he could avoid deportation, but it wasn't anything external to him, nor was his counsel's advice. His former counsel's advice, his criminal defense attorney's advice, that when consulted seven months into his prison term, counsel told him, look, your case is final. You plead guilty. You've acknowledged the immigration consequences of the plea. You've waived your right to appeal. There's no way the loss amount is going down below $10,000. I mean, so it wasn't that counsel's advice that would have prevented Mr. Ademiju from filing a 2255 within one year, and in fact, didn't prevent him from filing a 2255. Ademiju went out and did it on his own. The fact is, though, he did it too late, and it's beyond the statute of limitations, and there was no abuse of discretion in holding him to that. On the alternative, you know, going back to, I think it's wrapped up with this limitations period, but the question of ineffective assistance, I think it would be, there's no way that Mr. Minkus had given ineffective assistance of counsel here on the immigration consequences of this plea, where the plea itself acknowledges the consequences. Ademiju wanted to go along with the plea, even if it resulted in automatic deportation, and Minkus had, and Ademiju had hired an immigration attorney to consult about what was going to happen to him in this case. So for these reasons, we ask that you affirm the ruling of the district court dismissing Ademiju's 2255. Thank you, Mr. Fuller. Mr. Wright? Yes, may it please this court, let me begin with the plea agreement. Ademiju was comfortable with the language in the plea agreement, which alerted him to what might happen because he received erroneous legal advice as to what would happen. The language that the government is relying on here would not survive leave, wherein the Supreme Court said if a client is pleading guilty to an aggravated felony under immigration law, tell the client that that will result in mandatory deportation. So, simply put, the language in the plea agreement doesn't tell Ademiju that he's pleading to an aggravated felony that seals his immigration fate. If anything, it speaks to a future decision being made by another entity as to his immigration consequences. Simply put, it doesn't alert him that his counsel gave him wrong advice. When you turn to the sentencing transcript, the government now cites portions of the transcript in which Ademiju was making the case that the immigration consequences outweigh any length of sentence. And he's responding to the government's request for three years, which, under his erroneous understanding, would lead to automatic deportation. What's clear from the sentencing transcript is that he believed there was a chance based on ineffective assistance of counsel. And even a small chance here is legally significant because, as he thought it did here, that chance could occur. Isn't it tough, Mr. Wright, to make the argument that guidelines said 57 months, recommendation was 37 months, judge literally the number comes out of his mouth, and then his defense attorney steps up right then, even before the rationale is given for the sentencing, and gets an even lower amount as a result of the immigration reason. It strikes me as difficult to make that argument that immigration isn't imbued within the sentencing, and Mr. Minkus was able to even get a lower amount. Now I understand the counterargument is perhaps in terms of time, Mr. Ademiju may have served maybe a couple more weeks because the 85% wouldn't have kicked in below it. So I guess in one sense he's getting a little bit longer in terms of incarceration, but certainly has the possibility of a waiver, right? Yes, that's correct. And I think what's clear here, and it shows just how important this fact was to the plea agreement, is that they asked for a sentence of less than 12 months to try to avoid the immigration consequences. And here the judge even relied on it, which further lulled him into believing that he didn't have a need to bring this petition. And let me just briefly, the government calls my client disingenuous, but it's actually the government that's been less than forthright here. Before they claimed that he knew with certainty he would be deported. Now they acknowledge that he was told he could avoid mandatory deportation if he was sentenced to less than 12 months. Before they claimed he received no response from counsel, and now they claim he did receive a response from counsel and that that advice was at least not deficient enough. Thank you, Mr. White. Thank you. Thanks to both counsel and the cases taken under advice.